Argued and submitted October 10, affirmed November 19, 1986

# DEPARTMENT OF ENVIRONMENTAL QUALITY OF THE STATE OF OREGON,
*Respondent,*

*v.*

# HAYWORTH FARMS, INC. et al,
*Petitioners.*

## (50-AQ-FB-82-09; CA A38688)

728 P2d 905

J. W. Walton, Corvallis, argued the cause for petitioners. With him on the brief was Walton & Collins, P.C., Corvallis.

Michael T. Weirich, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr.,

504

Solicitor General, and Richard D. Wasserman, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, and Rossman and Newman Judges.

ROSSMAN, J.

## ROSSMAN, J.

Petitioner[1] seeks review of an order by the Environmental Quality Commission (EQC) imposing a $1,000 civil penalty for violation of field burning rules. Although petitioner does not challenge the findings that he was engaged in open field burning after the fires-out time set by EQC, he contends that EQC erroneously interpreted its rule when it applied it to him. We affirm.

Petitioner is a grass seed grower who farms 5,000 acres and participates in the field burning smoke management program administered by the Department of Environmental Quality (DEQ). On September 23, 1982, he received authorization to open field burn 200 acres of grass seed fields, starting at 2:30 p.m. He was told the fires must be extinguished by 3:45 p.m., the fires-out time.

Petitioner successfully burned half of a 180-acre field. Attempts to burn the other half were unsuccessful. When they did not succeed in igniting that fire, he and his crew left the still-smoldering field and went to burn another field. It would have taken ten minutes to extinguish the smoldering field with water.

At approximately 3:40 p.m., while a 38-acre field was burning, a gust of wind carried the flames into a fence row on the edge of the field, causing a low-level emergency wildfire. The wildfire was controlled in ten to 15 minutes, or by 3:55 p.m. at the latest. Petitioner then decided that, rather than use water to extinguish the remaining flames, he would ignite the unburned 11 or 12 acres of the field, because he was low on water and it would take longer and create more smoke to extinguish the field with water than to burn it. At 4:10 p.m., petitioner was still actively igniting the 38-acre field, and at 4:19 p.m. DEQ aerial photographs were taken that show flames still present.

After petitioner finished the 38-acre burn, he refilled his water tanks and returned to the 90-acre field he had left smoldering. The field had visible flames four to five inches

---

[1]There are two named petitioners, Hayworth Farms, Inc. and John W. Hayworth, who co-owns Hayworth Farms with his wife. For purposes of this opinion, we will refer to petitioners in the singular.

high and was still smoldering. He extinguished the field with water in ten to 15 minutes, finishing about 5:30 p.m. Thus, although petitioner was authorized to burn for one hour and 15 minutes, he engaged in burning for three hours.

EQC regulates open field burning and may, by rule, prohibit or restrict burning. ORS 468.460(1). DEQ[2] is authorized to issue field burning permits pursuant to ORS 468.458(1), to enforce field burning rules adopted by EQC and to monitor and prevent unlawful field burning. ORS 468.474(1), (2). No one can burn, unless the field is registered and a permit is obtained. ORS 468.475. DEQ issues notices of civil penalties for violation of field burning permits and may commence enforcement proceedings before EQC under ORS 468.090(2).

Here, DEQ charged that petitioner violated OAR 340-26-010(5), which provides:

> "Any person open field burning under these rules shall *actively extinguish* all flames and major smoke sources when prohibition conditions are imposed by the Department." (Emphasis supplied.)

Following a contested case hearing before EQC, the commission found that petitioner had violated the rule by burning both the 38-acre field and the 90-acre portion of a field after the fires-out time and assessed a $1,000 fine. Petitioner does not dispute the facts but nevertheless disputes his liability for the violations.

Although the precise nature of petitioner's challenge to the agency's order is far from clear, we perceive three issues: (1) whether application of OAR 340-26-010(5) to him is incorrect, because of EQC's explanation of the term "extinguish"; (2) whether his actions were justified by an emergency; and (3) whether the rule requires EQC to consider the reasonableness of petitioner's actions. We note that petitioner does not directly challenge the rule, EQC's authority to promulgate it or the procedure by which it did so.

Petitioner first contends that EQC's interpretation

---

[2] EQC is a commission composed of five members, appointed by the governor. ORS 468.010(1). DEQ is an executive-administrative agency under EQC and subject to its policy direction. ORS 468.030; 468.035(1).

of the term "extinguish" to exclude actively igniting a field is incorrect. He argues that the term "actively extinguish" is ambiguous and should be construed to allow a grower to comply by igniting a field after fires-out time if the grower believes that to be good smoke management practice. The theory is that using an into-the-wind strip burn in a field ("back-firing") will exhaust the fuel source and cause the fire to go out.

■ Whether or not back-firing a field is good smoke management is not the issue here. The term "actively extinguish" is not ambiguous. "An unambiguous regulation, like an unambiguous statute, should not be interpreted but should be enforced according to its clear language." *Schoen v. University of Oregon,* 21 Or App 494, 500, 535 P2d 1378 (1975). Here, the rule was enforced according to its clear language. EQC did not "interpret" the term; it merely explained that the obvious meaning of the regulation is that burning is to stop and then applied the rule to the facts before it. Petitioner did not stop burning, but continued to ignite his field.

Petitioner admitted that he had read and understood the instructions on his burn permit:

> "The permittee shall monitor and burn in accordance with Department open field burning radio announcements and shall *immediately cease igniting* and actively extinguish all fires as rapidly as possible when a stop burning order is issued by the Department." (Emphasis supplied.)

He does not contend that the wording of the rule misled him or was so unclear as to require him to provide his own interpretation. Although he was free to engage in back-firing during the authorized burn time, the burn permit made it clear that he was not free to do so after the fires-out time. EQC did not err in applying the term "actively extinguish" according to its plain meaning.

■ Second, petitioner contends that his decision to ignite the remaining 11 or 12 acres of the 38-acre field was made under the stress of an emergency situation and that his conduct was therefore justified. The argument fails. EQC found that the emergency caused by the wildfire had ended by 3:55 p.m. at the very latest and that the decision to ignite the remainder of the field was made *after* the emergency had ended. Thus, whether or not an emergency exception could be

read into the rule, there was no emergency to justify his conduct.

■        Finally, petitioner asks us to read into the rule a "term of reasonableness." We decline to do so. The legislature has granted EQC the authority to promulgate rules regulating open field burning. Petitioner nonetheless argues that we should permit individual growers to determine what each considers to be the most reasonable, rapid and convenient method to extinguish a field burn; *i.e.,* he asks us to delegate to the individual regulated growers the decision of how to achieve the goals of smoke management. However, that responsibility has been delegated to EQC, which has enacted rules based on policy choices about how best to accomplish its mandate. It is not our function to make rules for the control of field burning. If the rule is to include an exception for a grower who is out of compliance but is acting reasonably, that exception is a policy choice that must come from the regulating agency, not from the court.[3]

Affirmed.

---

[3] Petitioner's second assignment of error is dependent on his prevailing on the first. Because we affirm EQC's order, we do not address it.